UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**RICKY LEE MEADOWS**                                                     **PLAINTIFF**

**v.**                       **No. 3:16-CV-00054-KGB-JTR**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner,**
**Social Security Administration**                          **DEFENDANT**

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction**

Ricky Lee Meadows applied for social security disability benefits with an amended alleged disability onset date of November 16, 2012. (R. at 40). The Administrative Law Judge ("ALJ") denied his application in a decision dated September 29, 2014. (R. at 26). After the Appeals Council denied Meadows's

---

[1]Berryhill is now the Acting Commissioner and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

1

request for review, the ALJ's decision became the final decision of the Commissioner. (R. at 1). Meadows has requested judicial review.

For the reasons discussed below, the Court recommends that the Commissioner's decision be reversed and remanded.

**II.     The Commissioner's Decision**

The ALJ found that Meadows had the severe impairments of: major depressive disorder, with antisocial personality disorder; hypertension (medically controlled); and mild thoracolumbar levoscoliosis with mild degenerative changes at L5-S1. (R. at 16). After considering these severe impairments, singularly and in combination with his other impairments (both severe and non-severe), the ALJ concluded that Meadows had the residual functional capacity ("RFC") to perform a limited range of sedentary work. (R. at 17).

Specifically, the ALJ found that Meadows could: lift/carry and/or push/pull up to 10 pounds occasionally; sit for up to six hours in an eight-hour workday; and stand/walk for up to two hours in an eight-hour workday. The ALJ limited Meadows to jobs that would not require: climbing ladders, ropes, or scaffolds; more than occasional performance of the remaining postural functions; exposure to hazards or unprotected heights; or contact with the general public. The work was further limited to tasks in which: interpersonal contact is incidental to the work performed; the complexity of one-to-two step tasks is learned and performed by rote with few

variables and requiring little individual judgment; supervision is simple, direct, and concrete; and the jobs can be learned within thirty days. (R. at 17–18).

Meadows had no past relevant work. (R. at 25). The ALJ heard testimony from a vocational expert ("VE") and determined that Meadows could perform other jobs existing in the national economy, including work as a small products assembler (fishing reels) or inspection table worker. (R. at 25–26). Thus, the ALJ concluded that Meadows was not disabled. (R. at 26).

## III. Discussion

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

Meadows presents two arguments. First, he contends that the ALJ erred by failing to find his visual acuity problem to be a severe impairment and, in turn, consider that severe vision impairment in arriving at his RFC. Second, he contends that the ALJ failed to fully and fairly develop the record concerning his mental impairments, nerve root compromise in the lumbar spine, and visual impairments.

The Court concludes that the ALJ failed to properly find Meadows's visual acuity problem to be a severe impairment and then consider it in arriving at his RFC. Thus it need not reach Meadows's second argument.

Meadows had an ophthalmic examination on August 13, 2012, which revealed a best-corrected vision of 20/40 in his right eye and 20/100 in his left eye. (R. at 611, 615). The examining doctor, Thomas L. Nix., M.D., also found: (1) mild constriction of the gross visual fields; (2) a mild amount of pannus in the left cornea periphery; and (3) "significant" constriction in both eyes on the plotting of field in visual field testing with a 30-2 algorithm. (R. at 611, 616-17). Dr. Nix noted that Meadows had suffered a "significant injury with lye to his eyes," which "could lead to some long-term focus issues." (R. at 611).

On July 31, 2013, Dr. Nix examined Meadows again. Meadows complained of decreased vision at night and "constant blurry vision during the day." (R. at 781, 783). Testing showed: (1) best corrected visual acuity of 20/50 in the right eye and 20/100 in the left eye, "with significant prompting"; (2) "scissoring of the red reflex"

4

in both eyes, which could indicate irregular astigmatism and contribute to decreased visual acuity; (3) "significant pannus" on both corneas; and (4) "significant" constriction of the visual field, "but in a clover leaf pattern which would indicate no significant pathology." (R. at 781, 783-85). Dr. Nix noted that there were "no significant changes" from the 2012 exam. (R. at 781).

The ALJ addressed Meadows's visual impairment in a single paragraph that merely summarized some of Dr. Nix's findings, but contained *no discussion* of how Meadows's visual limitations would impact his ability to work. (R. at 23). The ALJ made no express findings regarding the severity of Meadows's visual impairment, *i.e.*, whether it had "more than a minimal effect on [his] ability to work." *See* 20 C.F.R. §§ 404.1521, 416.921. As a result, the ALJ did *not* include any visual limitations in Meadows's RFC, and he did *not* include any visual limitations in any of the hypothetical questions he presented to the VE.

The Commissioner speculates that the restrictions in the RFC -- precluding climbing ladders, ropes, and scaffolds and exposure to unprotected heights – adequately account for Meadows's visual problems. However, the ALJ did *not* find Meadows's vision problems to be a severe impairment. Rather, he found Meadows's back problem to be a severe impairment, which undoubtedly accounts for the limitations involving climbing ladders, ropes and scaffolds, and exposure to unprotected heights. Thus, the record undermines the Commissioner's entirely

speculative argument that any of the limitations in the RFC were designed to account for Meadows's vision impairments.

This point is strongly reinforced by the sedentary-level jobs identified by the VE as jobs that an individual with Meadows's RFC would be able to perform: inspection table worker and small products assembler (fishing reels). (R. at 57-58). SSR 96-9p notes that because "[m]ost sedentary unskilled occupations require working with small objects," a visual limitation may cause "significant erosion of the sedentary occupational base." SSR 96-9p, 1996 WL 374185, *8 (S.S.A. July 2, 1996). According to the *Dictionary of Occupational Titles* ("DOT"), a "significant" component of the inspection table worker position is "inspecting-measuring-testing," and near visual acuity is required "frequently," *i.e.*, one-third to two-thirds of the time. *DOT* § 739.687-182 (4th ed. rev. 1991). While the *DOT* does not specifically require visual acuity to perform the job of fishing reel assembler, it is certainly questionable whether a person with Meadows's visual problems could perform such a job. *See DOT* § 732.684-062 (tasks include: positioning parts in slots, holes or over pins on frame of fishing reel; inserting drive shaft through line spool and frame bearing; positioning side plate assembly; aligning screw holes and screwing assembly to frame; placing crank on crankshaft and tightening nuts; screwing parts, such as control knobs and case covers, to frame).

The Eighth Circuit has noted that a loss of visual acuity is a non-exertional impairment that should be presented to the VE regarding its impact on an individual's ability to perform work-like tasks. *Doolittle v. Apfel*, 249 F.3d 810, 812 (8th Cir. 2001). The Commissioner maintains that *Doolittle* is inapposite because the claimant in that case had substantially more visual problems than Meadows, and the ALJ erroneously relied on the grids to find the claimant not disabled. *Id.* However, Meadows properly points out that *Doolittle* stands for the proposition that any substantial loss of visual acuity constitutes at least a non-exertional impairment, making it incumbent on the ALJ to obtain VE testimony regarding the extent to which such an impairment diminishes the number of jobs available in the national economy which an individual can perform. The ALJ's decision contains no consideration and analysis of the concrete consequences of Meadows' medically determinable vision problems, how those limitations factored into Meadows' RFC, and the extent to which they affected the number of available jobs.

The Commissioner also argues that the ALJ's failure to identify Meadows's visual impairments as severe is harmless error, as the ALJ resolved the step 2 determination of severity in Meadows's favor. However, the RFC represents the most a claimant can do despite *all impairments*, both severe and non-severe. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). Even if the ALJ reasonably found that the visual impairments were not severe, this would *not* justify his failure to include any

limitations related to such a substantial loss of visual acuity. Meadows's best-corrected vision is 20/50 in his right eye only. (R. at 781). It is difficult to imagine that such reduced visual acuity would have no impact on a claimant's RFC, especially in light of the VE's identification of only two jobs (fishing reel assembler and inspection table worker) Meadows could perform – both of which required visual acuity skills to some extent. Accordingly, the ALJ erred in failing to account for Meadows's visual acuity problems in arriving at his RFC and in failing to obtain VE testimony as to the extent to which those visual limitations would affect the ability to perform sedentary jobs.

## IV. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales,*, 402 U.S. 389, 401 (1971).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED with instructions to further develop the record as necessary and to fully consider Meadows's visual impairments.

DATED this 10th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE